# B

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss

SUPERIOR COURT DEPARTMENT OF
THE TRIAL COURT
CIVIL ACTION NO.: 2183CV00235

JOSEPH FOLEY and MELISSA FOLEY,
Individually and as Personal Representatives of
the Estate of JOSEPH PARKER FOLEY,

Plaintiffs,

v.

JOHN BLAKE and DUXBURY PUBLIC
SCHOOLS,

Defendants.



FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

MAR 3 0 2021

Clerk of Court

## COMPLAINT

Plaintiffs Joseph Foley and Melissa Foley, individually and by and for their deceased son, Joseph Parker Foley ("Parker"), as the Personal Representatives of Parker's estate, hereby bring this action against John Blake and the Duxbury Public Schools.

This action concerns a tragic set of circumstances involving a young boy who was sexually assaulted and raped, repeatedly, by his middle school gym teacher while a student at the Duxbury Middle School. John Blake ("Blake") was the gym teacher. The setup of the boys' locker room at the Duxbury Middle School allowed Blake to act as a gatekeeper for boys attending gym class, and Blake used his power and authority to hold boys back from gym class at his whim and discretion. For Parker, that unfettered and unchecked power and authority had serious and tragic consequences. Throughout a painful stretch of his time at the Duxbury Middle School, Blake held Parker back from gym class, led him to an empty classroom, and forced himself upon an innocent and helpless young boy. The sexual assaults only came to a stop when

Parker brought a knife to school and threatened to kill Blake if he ever touched him again. The heinous acts committed by Blake pushed Parker to a life of drug abuse to escape the mental pain and anguish that followed. Ultimately, in late 2020, Parker succumbed to his drug addiction and died of an overdose, alone in his apartment.

## PARTIES

1. Parker is deceased. He is the son of Joseph Foley and Melissa Foley.

2. Joseph Foley is an individual residing in Duxbury, Massachusetts.

3. Melissa Foley is an individual residing in Duxbury, Massachusetts.

4. Joseph and Melissa Foley have been appointed Personal Representatives of the estate of Parker Foley.

5. Blake is an individual residing in Canton, Massachusetts. Until recently, Blake was a gym teacher at the Duxbury Middle School and the Head Coach of the Duxbury Boys Varsity Hockey Team.

6. Duxbury Public Schools ("DPS") is a department or agency of the Town of Duxbury, with an administrative address at 93 Chandler Street, Duxbury, Massachusetts. DPS operates and manages the public schools within the town: Chandler School, Alden School, Duxbury Middle School, and Duxbury High School.

## FACTUAL ALLEGATIONS

7. In the mid-2000s, Parker attended the Duxbury Middle School.

8. One of the required classes for students at the Duxbury Middle School was physical education class, or gym.

9. Blake was one of the gym teachers at the Duxbury Middle School.

- 3 -

10. Through his position at the Duxbury Middle School, Blake was put into direct contact with Parker.

11. As a male student who was required to take gym class, Parker came to be under the direction and control of Blake, who used his position of authority and trust over Parker to sexually abuse and harass him.

12. Blake did sexually harass and abuse Parker, who was a minor at the time.

13. As a student, Parker was under Blake's direct supervision, care and control, thus creating a special relationship, fiduciary relationship, and/or special care relationship with each of Blake and DPS, and each of Blake and DPS stood *in loco parentis* with respect to Parker, a minor child, while Parker was attending school and participating in school-related functions and activities at Duxbury Middle School.

14. DPS failed to take reasonable steps and/or to implement reasonable safeguards to avoid acts of unlawful sexual conduct by Blake, including but not limited to preventing the abuse of Parker by Blake.

15. At the Duxbury Middle School, boys attending gym class would enter the boys' locker room to get dressed for gym class, and then would proceed to enter the gymnasium through the locker room.

16. At that time, Blake had an office that directly overlooked the area where the boys would change to get ready for gym class. Blake's office was set up such that he would be able to see and inspect the boys before they left the locker room to enter the gym.

17. Blake had a developed a pattern and practice of inspecting the boys and determining, on his whim and discretion, whether the boys were appropriately dressed and/or otherwise able to attend gym class. If and when he made the determination that a boy was not

allowed to attend gym class, he would hold that boy from gym class while the other boys would enter the gymnasium.

18. Blake took turns with another gym teacher conducting gym class while the other remained in their respective office throughout the class. If a student was not appropriately dressed for gym class, the student was required to sit in the bleachers while the other students participated in class.

19. Blake's co-teacher had no recollection of seeing Parker in the bleachers when he was not able to participate in gym class, despite the fact that Parker was regularly precluded from participating in gym class.

20. Blake had unfettered and unchecked power and authority to hold Parker back from gym class, without any monitoring or supervision by DPS to determine the whereabout of Parker when he was absent from gym class.

21. The setup of the boys' locker room, with Blake being empowered to act as gatekeeper for young boys, and the failure of DPS to monitor or check on a student repeatedly missing from class, proved to be tragic for Parker.

22. On multiple occasions, Blake held Parker back from gym class and allowed other boys to join gym class.

23. Blake then used his age and position of authority to force and compel Parker to engage in a series of sexual activities that progressed over the course of time.

24. Initially, Blake physically touched Parker inappropriately and forced Parker to touch him back. Eventually, that led to Blake raping Parker, forcing Parker to engage in oral sex and sex with anal penetration without Parker's consent. These events happened in the gym and/or in an empty classroom within the Duxbury Middle School.

- 5 -

25. Parker did not consent to the inappropriate touching and sexual assaults by Blake.

26. Parker struggled with the impact of Blake's repeated sexual assaults, but did not share the events with anyone at the time.

27. After suffering months of unwanted sexual abuse at the hands of Blake, Parker took a knife from his neighbor's house and brought it to school one day. When Blake attempted to sexually assault Parker that day, Parker drew the knife on Blake and threatened to kill Blake if he ever touched him again. Only then did Blake cease his sexual assaults on Parker.

28. No one other than Parker and Blake knew of the sexual assaults that had occurred, and Parker kept to himself the heinous details of what Blake had done to him.

29. Shortly after the sexual abused ended, however, Parker began a life of drug use to escape from the mental torment that he suffered after being victimized by Blake.

30. Parker suffered from a drug addiction throughout high school and college, and was in and out of drug treatment centers.

31. Parker's behavior and actions in the years following the sexual assaults against him impacted his relationship with family and friends.

32. During college, Parker had a serious girlfriend. The relationship suffered, however, because of the recurrent traumatic effects of the Blake sexual assaults from years prior. Parker was unable to have an intimate relationship with his girlfriend, physically or mentally, and it ultimately pushed Parker back to using drugs and caused that relationship to end. Prior to that relationship ending, Parker shared with his girlfriend the details of the sexual abuse he suffered at the hands of Blake.

33. Parker also sought treatment from a psychotherapist where he was living in Minnesota, and also shared the details of the sexual abuse with that therapist.

34. Parker also reached out to a close high school friend and shared the details of the sexual abuse with that friend.

35. Approximately two years ago, Parker shared some of the details of the sexual abuse with his parents, but insisted that they not report it to DPS or the police because of his drug addiction, his mental health, and his inability to cope with the publicity it would create. His parents honored his wishes not to identify him as the victim; however, his father, Joseph Foley, submitted an anonymous letter identifying Blake as a sexual predator who had committed sexual assaults at the Duxbury Middle School.

36. On information and belief, the anonymous report was reported to the Duxbury Police; however, no legal or disciplinary action was taken against Blake at that time, and Blake continued as an educator and coach in the DPS system.

37. Following Parker's death in late 2020, his parents uncovered additional evidence of the sexual abuse that Parker suffered at the hands of Blake during middle school, including a handwritten note that Parker had left in his apartment stating that Blake had molested him. Parker's parents also spoke to Parker's ex-girlfriend and high school friend, whom Parker had shared details of the sexual assault, and also spoke to another boy in Parker's seventh-grade gym class who recounted the setup of the boys' locker room and Blake's positioning as the gatekeeper for the boys to attend gym class.

38. Parker's parents reported the events of Parker's sexual abuse to the Duxbury Police, who has investigated the matter. On information and belief, there is a police report detailing the results of the investigation that corroborates the facts and allegations contained herein.

39.  Parker's parents also have reported and complained of the events of Parker's sexual abuse to DPS and the Massachusetts Department of Education. On information and belief, Blake was placed on leave pending the results of an investigation by DPS.

40.  On information and belief, the investigation by the DPS credited the statements and other evidence that Blake sexually assaulted Parker while he was a student at the Duxbury Middle School, finding credible Parker's accounts of such sexual misconduct, as reported to friends and family after the fact, and finding that Blake was not credible in his denials of having sexually assaulted Parker.

## COUNT I
### Assault and Battery
### (Blake)

41.  Plaintiffs restate and reaver each and every allegation contained above, as if fully stated herein.

42.  By his actions and conduct, as alleged herein, Blake attempted to and actually did touch Parker in a harmful and offensive manner, and placed Parker in immediate fear of being touched in such a manner.

43.  By his actions and conduct, as alleged herein, Blake committed acts of sexual assault and battery against Parker.

44.  As a direct result thereof, Plaintiffs have been damaged, in an amount to be determined at trial.

## COUNT II
### Violation of M.G.L. c. 214, § 1C and M.G.L. c. 151C, § 2
### (All Defendants)

45.  Plaintiffs restate and reaver each and every allegation contained above, as if fully stated herein.

-7-

46. Massachusetts General Laws Chapter 214, Section 1C provides persons with a private right of action for violations of Massachusetts General Laws Chapter 151C, Section 2(g).

47. Massachusetts General Laws Chapter 214, Section 1C provides that a person shall have the right to be free from sexual harassment and that the Superior Court shall have the jurisdiction to enforce that right and to award damages and other relief for a violation of that statute.

48. Massachusetts General Laws Chapter 151C applies to public schools, and by the statute's terms, any sovereign immunity that might otherwise apply to DPS has been waived in order to provide a remedy for students who are sexually harassed in public schools.

49. By their actions and conduct, as alleged herein, DPS and Blake have violated Massachusetts General Laws Chapter 214, Section 1C and Massachusetts General Laws Chapter 151C, Section 2(g).

50. As a direct result thereof, Plaintiffs have been damaged, in an amount to be determined at trial.

## COUNT III
### Violation of 42 U.S.C. § 1983
### (All Defendants)

51. Plaintiffs restate and reaver each and every allegation contained above, as if fully stated herein.

52. By his actions and conduct, as alleged herein, Blake, acting under color of state law, acted in a way that deprived Parker of rights secured by the U.S. Constitution or by federal law.

53. By his actions and conduct, as alleged herein, Blake deprived Parker of his right to bodily integrity, as protected by the Fourteenth Amendment's Due Process Clause.

54.     By its actions and conduct, as alleged herein, DPS was grossly negligent in such a way that amounted to deliberate, reckless and/or callous indifference about the health, welfare and safety of Parker while Parker was under DPS's supervision, care and control.

55.     By their actions and conduct, as alleged herein, DPS and Blake have violated 42 U.S.C. § 1983.

56.     As a direct result thereof, Plaintiffs have been damaged, in an amount to be determined at trial.

### COUNT IV
### Violation of Title IX of the Education Amendments of 1972
### (DPS)

57.     Plaintiffs restate and reaver each and every allegation contained above, as if fully stated herein.

58.     Title IX of the Education Amendments of 1972 provides that no person shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving federal financial aid assistance.

59.     On information and belief, DPS is a federal funding recipient under Title IX of the Education Amendments of 1972.

60.     By its actions and conduct, as alleged herein, DPS knew or should have known of Blake's actions and conduct towards Parker and was grossly negligent in such a way that amounted to deliberate, reckless and/or callous indifference about the health, welfare and safety of Parker while Parker was under DPS's supervision, care and control.

61.     By its actions and conduct, as alleged herein, DPS has violated Title IX of the Education Amendments of 1972.

62. As a direct result thereof, Plaintiffs have been damaged, in an amount to be determined at trial.

## COUNT V
### Violation of the Massachusetts Tort Claims Act, M.G.L. c. 258, § 2
### (DPS)

63. Plaintiffs restate and reaver each and every allegation contained above, as if fully stated herein.

64. By his actions and conduct, as alleged herein, Blake committed acts of sexual assault and battery against Parker.

65. At relevant times, Blake was acting within the scope of his employment with DPS, as defined by the Massachusetts Tort Claims Act, M.G.L. c. 258, § 2.

66. Blake had unfettered and unchecked power and authority to hold Parker back from gym class, without any monitoring or supervision by DPS to determine the whereabout of Parker when he was absent from gym class.

67. DPS failed in its duty and obligation to satisfactorily protect Parker because of, among other things, the setup of the boys' locker room, with Blake being empowered to act as gatekeeper for young boys, and the failure of DPS to monitor or check on a student repeatedly missing from class. By so acting, DPS created and/or contributed to the condition or situation resulting in the harm inflicted on Parker by Blake.

68. By its actions and conduct, as alleged herein, DPS failed in its duty and obligation to satisfactorily supervise and oversee Blake.

69. By its actions and conduct, as alleged herein, DPS was grossly negligent in such a way that amounted to deliberate, reckless and/or callous indifference about the health, welfare and safety of Parker while Parker was under DPS's supervision, care and control.

70. By its actions and conduct, as alleged herein, DPS has violated Massachusetts Tort Claims Act, M.G.L. c. 258, § 2..

71. As a direct result thereof, Plaintiffs have been damaged, in an amount to be determined at trial.

<u>**COUNT VI**</u>
**Intentional Infliction of Emotional Distress**
**(Blake)**

72. Plaintiffs restate and reaver each and every allegation contained above, as if fully stated herein.

73. By his actions and conduct, as alleged herein, Blake committed acts of sexual assault and battery against Parker.

74. Blake knew or should have known that Parker would suffer emotional distress as a result of his sexual assaults against Parker.

75. Blake's conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community.

76. Blake's actions and conduct, as alleged herein, caused Parker to suffer emotional distress.

77. The emotional distress that Parker suffered was so severe that no reasonable person could be expected to endure it.

78. As a direct result thereof, Plaintiffs have been damaged, in an amount to be determined at trial.

## COUNT VII
## Negligent Infliction of Emotional Distress
## (All Defendants)

79. Plaintiffs restate and reaver each and every allegation contained above, as if fully stated herein.

80. By his actions and conduct, as alleged herein, Blake committed acts of sexual assault and battery against Parker.

81. At relevant times, Blake was acting within the scope of his employment with DPS, as defined by the Massachusetts Tort Claims Act, M.G.L. c. 258, § 2.

82. Blake had unfettered and unchecked power and authority to hold Parker back from gym class, without any monitoring or supervision by DPS to determine the whereabout of Parker when he was absent from gym class.

83. DPS failed in its duty and obligation to satisfactorily protect Parker because of, among other things, the setup of the boys' locker room, with Blake being empowered to act as gatekeeper for young boys, and the failure of DPS to monitor or check on a student repeatedly missing from class.

84. By its actions and conduct, as alleged herein, DPS failed in its duty and obligation to satisfactorily supervise and oversee Blake.

85. By its actions and conduct, as alleged herein, DPS was grossly negligent in such a way that amounted to deliberate, reckless and/or callous indifference about the health, welfare and safety of Parker while Parker was under DPS's supervision, care and control.

86. Blake knew or should have known that Parker would suffer emotional distress as a result of his sexual assaults against Parker.

87. Blake's actions and conduct, as alleged herein, caused Parker to suffer emotional distress.

88. Parker suffered emotional distress and physical harm manifested by objective symptomatology.

89. Any reasonable person would have suffered emotional distress under the circumstances.

90. As a direct result thereof, Plaintiffs have been damaged, in an amount to be determined at trial.

## COUNT VIII
## Loss of Consortium
## (All Defendants)

91. Plaintiffs restate and reaver each and every allegation contained above, as if fully stated herein.

92. M.G.L. c. 231, Section 85X provides that parents of a minor child have a cause of action for loss of consortium of the child who has been injured against any person who is legally responsible for causing such injury.

93. Based on the actions and conduct of Blake and DPS, as alleged herein, Parker suffered a serious injury which resulted in the loss of affection, comfort, companionship and familial relations with his parent, Joseph and Melissa Foley.

94. As a direct result thereof, Joseph and Melissa Foley have been damaged, in an amount to be determined at trial.

## JURY DEMAND

Plaintiffs demand a jury by trial on all claims so triable.

WHEREFORE, for the foregoing reasons, Plaintiffs pray that the Court grant judgment in their favor, as follows:

1. That the Court enter judgment in favor of Plaintiffs on all counts, in an amount to be determined at trial;

2. That the Court allow for an award of punitive damages to the extent allowable by law;

3. That the Court grant Plaintiffs their attorneys' fees to the extent allowable by law; and

4. That the Court grant Plaintiffs such other and further relief as the Court deems just and proper.

Respectfully Submitted,

JOSEPH FOLEY and MELISSA FOLEY,
Individually and as Personal Representatives of the
Estate of JOSEPH PARKER FOLEY,

By their counsel,

DATED: March 30, 2021

/s/ Jason W. Morgan

Jason W. Morgan (BBO #633802)
Drohan Tocchio & Morgan, P.C.
175 Derby Street, Suite 30
Hingham, Massachusetts 02043
Tel: (781) 749-7200
Fax: (781) 740-4335
jmorgan@dtm-law.com