UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| JOSEPH FOLEY and MELISSA FOLEY, *Individually and as Personal Representatives of the Estate of* JOSEPH PARKER FOLEY,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN BLAKE and DUXBURY PUBLIC SCHOOLS,<br><br>Defendants. | Case No. 21-CV-10615-AK |

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO COMPEL DANIEL KENNEY TO APPEAR FOR DEPOSITION

**A. KELLEY, D.J.**

This case arises out of allegations brought by Plaintiffs Joseph and Melissa Foley ("Plaintiffs") surrounding the tragic 2020 overdose death of their son, Joseph Parker Foley (hereinafter, "Parker" or "Parker Foley"). [Dkt. 1-2 ("Compl.") at 1–2]. Plaintiffs have asserted that when their son was a student at Duxbury Middle School in the mid-2000s, Defendant John Blake ("Blake"), who until recently was employed by Defendant Duxbury Public Schools ("DPS") as a middle school gym teacher, repeatedly raped and sexually abused Parker, resulting in severe trauma, drug use, and ultimately the overdose that ended Parker Foley's life at age 27. [See generally Compl.].

Currently pending before the Court is Plaintiffs' Motion to Compel Daniel Kenney to Appear for Deposition [Dkt. 50], in which Plaintiffs have asked the Court to compel Daniel

1

Kenney ("Mr. Kenney"), another DPS employee who both taught Parker and worked with Defendant Blake, to appear for oral deposition. [See Dkts. 50, 54, 56]. Plaintiffs filed the motion after receiving word from counsel for DPS that Mr. Kenney would be unavailable to be deposed due to an anxiety condition. [Dkt. 50 at 3]. After receiving leave of this Court to file opposition papers and exhibits partially under seal due to the medical information discussed therein [see Dkt. 53], Defendants filed their opposition [Dkt. 54] to Plaintiffs' motion to compel, along with an attached note from Mr. Kenney's primary care provider's office [Dkt. 54-1]. Defendants subsequently filed a reply brief [Dkt. 56], and the Court heard argument from the parties at a status conference on June 28, 2022.

For the reasons set forth below, Plaintiffs' Motion to Compel Daniel Kenney to Appear for Deposition is **GRANTED**, subject to the limitations discussed in more detail below.

I. **Relevance and Probative Value of Mr. Kenney's Deposition Testimony Generally**

Fed. R. Civ. P. 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." Fed. R. Civ. P. 26(b)(1). See also KinectUs LLC v. Bumble Trading LLC, No. 21-MC-91665-ADB, 2021 WL 6066539, at * 2 (D. Mass. Dec. 22, 2021). Moreover, "[a]s the Supreme Court has instructed, because 'discovery itself is designed to help define and clarify the issues,' the limits set forth in Rule 26 must be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig., No. MDL 13-2419-FDS, 2013 WL 6058483, at *3 (D. Mass. Nov. 13, 2013) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)); see also Green v. Cosby, 152 F. Supp. 3d 31, 34 (D.

Mass. 2015), modified on reconsideration, 160 F. Supp. 3d 431 (D. Mass. 2016); Cabi v. Boston Children's Hosp., No. 15-CV-12306-DJC, 2017 WL 8232179, at *1 (D. Mass. June 21, 2017).

The discovery sought by Plaintiffs in their motion to compel Mr. Kenney's deposition testimony is relevant, proportional to the needs of the case, and not unduly burdensome—at least certainly not based on the information presented to the Court to date. Not only was Mr. Kenney identified by Defendant Blake in a list of specific people who would have "personal knowledge of information regarding [Plaintiffs'] allegations" [Dkt. 50 at 38; see also Dkt. 50 at 2], but Defendant Blake also stated he has "specific recall" of some sort of potentially contentious interaction between Mr. Kenney and one of the Plaintiffs regarding Parker Foley. [Dkt. 50 at 38]. Additionally, Plaintiffs cite to materials produced by Regina Ryan, an independent investigator hired by DPS to look into Plaintiffs' claims and evaluate Defendant Blake's credibility, which identify Mr. Kenney as someone with relevant information. [Dkt. 50 at 2]. Specifically, Plaintiffs' motion relies on Ms. Ryan's formal report, in which she references a conversation about Parker's death that occurred between Defendant Blake, Mr. Kenney, and other DPS staff [Dkt. 50 at 20]; as well as notes from Ms. Ryan's interview with Mr. Kenney, which appear to reference a conversation about Parker between Defendant Blake and Mr. Kenney (though it is not entirely clear) [Dkt. 54 at 5].

Defendants argue that the purportedly limited nature of Mr. Kenney's relevant knowledge, along with the fact other teachers were present for the conversation mentioned in Ms. Ryan's formal report, renders his deposition cumulative and unnecessary. [Dkt. 54 at 5–6]. The Court disagrees. The presence of multiple witnesses to a highly relevant event or conversation does not render all but one of those witnesses irrelevant or cumulative. Mr. Kenney's participation in at least one, likely two, and perhaps even more conversations with

Defendant Blake about Parker Foley make his deposition testimony relevant, unique, and emblematically discoverable—regardless of whether other teachers were present for one or more of those conversations.

### II. Whether Good Cause Exists to Preclude or Limit Mr. Kenney's Deposition

The Court now turns to Defendants' argument that Mr. Kenney's anxiety condition should preclude his appearance for deposition [see Dkt. 54 at 6–7], and the various limitations and alternatives proposed by the parties [see Dkt. 50 at 3; Dkt. 54 at 8].

Fed. R. Civ. P. 26(c)(1) provides that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," by, *inter alia*, precluding some or all of the contents of discovery sought, or otherwise setting limits on how and from whom it is obtained. Fed. R. Civ. P. 26(c)(1). In order to meet this good cause standard, the party or person seeking to limit discovery must provide "a particular factual demonstration of potential harm, not [] conclusory statements." Peoples v. Time Warner Cable, Inc., No. 3:16-CV-11398-MGM, 2017 WL 2836991, at *2 (D. Mass. June 30, 2017) (quoting Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986)). Moreover, "[p]rohibiting the taking of depositions is an extraordinary measure," requiring "a heavy burden of showing 'extraordinary circumstances' based on 'specific facts' that would justify such an order." Prozina Shipping Co., Ltd. v. Thirty-Four Automobiles, 179 F.R.D. 41, 48 (D. Mass. 1998) (internal citation omitted).

Defendants' assertions regarding potential harm to Mr. Kenney if he is compelled to give deposition testimony epitomize the sort of conclusory, broad statements that are wholly inadequate to preclude discovery. The doctor's note attached to Defendants' opposition as

Exhibit A was signed by a nurse practitioner at Mr. Kenney's primary care provider's office and is comprised of four brief sentences. [Dkt. 54-1]. It says nothing whatsoever about how Mr. Kenney's anxiety condition might be affected, specifically, by giving deposition testimony, nor provides any meaningful detail on specific diagnoses or treatments. [Id.] Defendants' arguments are no better, as they, too, have been silent as to any specific harms or side effects they believe Mr. Kenney would suffer if compelled to sit for a deposition. [See Dkt. 54 at 6–7].

Essentially, these are precisely the sort of conclusory assertions that fall far short of what would be required for the Court to seriously entertain prohibiting deposition testimony—particularly where, as here, the witness almost certainly possesses relevant and unique discoverable information. Strict standards for precluding discovery exist for a reason. There would be little testimony to be had if every party or witness who wished to avoid involvement in litigation (as nearly all do) could exempt themselves from discovery obligations or appearing to testify simply by obtaining a few sentences from a doctor's office.

Defendants have sought, as an alternative to compelling Mr. Kenney to appear for oral deposition, that he be allowed to give deposition testimony by written questions, pursuant to Fed. R. Civ. P. 31 [see Dkt. 54 at 8]. However, depositions on written questions are "generally disfavored," In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig., No. MDL 13-2419-RWZ, 2015 WL 13715297, at *1 (D. Mass. Dec. 18, 2015), and "rarely, if ever, used in modern litigation under any circumstances," Fid. Int'l Currency Advisor a Fund, LLC v. United States, 2007 WL 9412764, at *3 (D. Mass. May 23, 2007). While they *may* be allowed where "the issues to be addressed by the witness are narrow and straightforward and the hardships of taking an oral deposition would be substantial," In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig., No. MDL 13-2419-RWZ, 2015 WL 13715297, at *1 (D. Mass. Dec. 18,

2015) (citing Mill-Run Tours, Inc. v. Khashoggi, 124 F.R.D. 547, 549 (S.D.N.Y. 1989)), neither such narrowness of inquiry nor significance of hardship is present here.

Ms. Ryan's notes as cited by Defendants in their opposition filing [see Dkt. 54 at 5], along with all the ultimate uncertainty regarding exactly how much Mr. Kenney knows and about what, present precisely the sort of vague, probative information that necessitates taking a live, oral deposition of the witness. Defendants claim Plaintiffs have a "self-interested reading of inferences" [id. at 6] from Ms. Ryan's notes—yet the very possibility of inferences indicates the need for further questioning with the ability to ask follow-up questions in real time and with the ability to note the deponent's reactions and credibility—as is the standard for discovery by deposition.

The Court also notes that, per the parties' representations at the June 28, 2022 status conference, Mr. Kenney did not appear to suffer any considerable anxiety when he was interviewed by Ms. Ryan. However, in that interview, he was questioned about roughly the same subject matter as he will be in this deposition, yet without the assistance or comfort of counsel. It is difficult for the Court to understand precisely why sitting for a deposition when counsel is present and available to object to questions and request breaks would be more nerve-wracking than the type of investigative questioning Mr. Kenney has already participated in without representation and without any problems.

There are highly compelling reasons why depositions by written questions are so disfavored. While such depositions "offer one slight advantage over live depositions (the reduction of expense through elimination of attorney travel time and transcript costs), they present huge disadvantages, including the loss of spontaneity, the inability to ask follow-up questions, the inability to observe the witness, and the inability to ensure the integrity of the

6

responses, which may be drafted or edited by lawyers." Fid. Int'l Currency Advisor a Fund, LLC v. United States, 2007 WL 9412764, at *3 (D. Mass. May 23, 2007). The Court finds such disadvantages too costly in a matter of this nature—one which centers on allegations of serious sexual abuse of a deceased young man who is himself obviously unavailable to testify—to order such an extraordinary measure hampering discovery.

### III.   Conclusion

The Court would be remiss not to acknowledge the significance of mental health, insofar as it is often not afforded the same considerations as physical health in all sorts of medical, legal, and political spheres. The overall importance of all health conditions, however, does not change the fact that Defendants' submissions regarding Mr. Kenney in this matter fall far short of even approaching what would be required to prohibit his deposition or order that it be conducted through written questions. Nevertheless, the Court does adopt some of the limiting parameters proposed by the parties for Mr. Kenney's deposition [see Dkt. 54 at 8; Dkt. 50 at 3].

As such and in summary, Plaintiffs' Motion to Compel Daniel Kenney to Appear for Deposition [Dkt. 50] is **GRANTED**, and this Court further **ORDERS** that Mr. Kenney's deposition be limited to no more than two hours, with as many breaks as needed to accommodate Mr. Kenney's health needs. As stated in the Court's prior order [Dkt. 58], the parties have until September 1, 2022 to complete fact discovery and to resolve other outstanding discovery disputes and file any necessary discovery motions.

**SO ORDERED.**

August 3, 2022                                                                                   /s/ Angel Kelley
                                                                                                            ANGEL KELLEY
                                                                                                            U.S. DISTRICT JUDGE